JACKSON, *ex dem.* KIP, *against* MURRAY.

A memorandum of an agreement for the sale of lands, is evidence of a unity
of title to each and every part of such lands, as well the part in actual
possession, as the part not in actual possession; and after a long undisturb-
ed possession of part, by the vendee mentioned in such memorandum, the
court will presume a deed conformable thereto.

An ancient account, in the hand-writing of the ancestor of the lessor of the
plaintiff, found with the title deeds, cannot be received in evidence in sup-
port of the title.

The hand-writing of a surveyor, to an ancient survey, may be proved by a
person who has become acquainted with such surveyor's hand-writing by
inspecting ancient surveys avowedly made by him.

The confessions of a tenant in possession, as to his holding, are admissible.

EJECTMENT for certain lands, situated in the 9th ward of
the city of New York.

It appeared that a patent for a large tract of land, on
Manhattan Island, had been granted by Governor Nicoll
to Petrus Stoutenburgh and his heirs, on the 25th January,
1667. The lands in controversy were alleged, by the
plaintiff, to be part of the lands covered by that patent.

The plaintiff, in tracing his documentary title to the pa-
tentee, produced a lease from Petrus Stoutenburgh to Ja-
cobus Kip, the ancestor of the lessor of the plaintiff, made
a few years after the grant of the patent, and purporting
to be a lease for a term of years, of all the lands of Petrus
Stoutenburgh. He next produced a memorandum of an
agreement for the sale of all the lands set forth in the said
lease, made between Petrus Stoutenburgh and Jacobus
Kip, in 1680, two years after the end of the term granted
by the lease. In order to show a performance of the terms

of the agreement, as to the payment of the purchase-money by the said Jacobus Kip, an account was offered in evidence, which had been found among the ancient title deeds of the estate, in the hand-writing of Jacobus Kip.

SPENCER, J. The testimony is inadmissible; it is merely *ex parte:* having been found with the title deeds cannot make such a document evidence for the plaintiff. Vide *Jackson, ex dem. Beekman et ux* v. *Witten,* 2 Johns. 180.

The plaintiff then proceeded to locate his patent, and offered, in evidence, an old survey of a neighboring patent, made in 1699, by Mr. Graham, the then surveyor-general, as fixing one of the boundary lines of Stoutenburgh's patent. To prove that this survey had been made by Graham, the plaintiff offered to prove the hand-writing by a witness who had been in the habit of inspecting ancient surveys, and had thus become acquainted with surveys avowedly made by Graham.

The defendant's counsel contended, that this would be introducing comparison of hands in a manner unsupported by authorities; that the papers which had enabled the witness to form his opinion ought to be produced to the jury, so that they might make the comparison for themselves, and not rest merely on the inference of a witness.

Plaintiff's counsel cited 1 Peake's Law of Evidence, p. 104.

SPENCER, J. I am of opinion that testimony like this has been received in the courts, without producing the pa-

pers which had enabled the witness to draw his inference. I shall therefore admit it.(1)

The plaintiff, having located the patent, proved actual possession in the descendants of Jacobus Kip, of part of the land covered by the patent, and showed that the remainder, being the very land in controversy, had remained

(1) The decision of the judge, on this point, was excepted to, and the question was raised at bar.    7 Johns. 5.    But the cause was decided there on another ground, and no express opinion pronounced on this point.    This decision is strongly supported by Mr. Peake, who, at the place cited by the plaintiff's counsel, makes the following observations: "In cases where the antiquity of the writing, makes it impossible for any person to prove it from having actually seen the party write, and where the instrument acquires a degree of authority, from the place in which it is found, the evidence of a man, who has had opportunities of making himself acquainted with the character, by frequent inspection, has been admitted.    And, therefore, where a parson's book was produced to prove a *modus*, he having been long dead, a witness who had examined the parish books, in which his name was written, was permitted to swear to the similitude, for it was the best evidence the thing was capable of."    Vide *ante Haskins* v. *Stuyvesant*, and the note to that case.

Since writing this note, two very important cases have occurred in England; one before a Committee of Parliament, and the other before the Queen's Bench.

In 1843, the *Fitzwalter Peerage case*, 10 C. & F., 133, and in 1845, *Doe, ex dem. Jenkins*, v. *Davis*, 16 L. J. Q. B. 218.    The first case seems adverse to the above ruling of Spencer, J., and the last decidedly sustains it.

In the *Fitzwalter Peerage case*, the claimant of the title produced an ancient family pedigree, taken from the proper custody, and purporting to be in the hand-writing of an ancestor who had died in 1751, nearly 100 years before the trial, and who stood in the direct line of the claimant's ancestors. This evidence was clearly proper in itself on a question of pedigree.    The difficulty was in the proof of hand-writing.    The will of this ancestor, from the prerogative office, was already in proof in the case for a different purpose.    And four other documents, proved to be in the hand-writing of this ancestor, were produced in addition; and it was proposed to prove the identity of the signer of these documents, with the writer of the pedigree, by comparison of the hand-writing of the latter, with the signatures to the

vacant and unimproved until the year 1788, when the actual possession of the defendant, and those under whom he claimed, commenced.

Upon this testimony, the defendant's counsel moved a non-suit.

proved documents, and for this purpose the inspector of franks, in the general post-office, was called, who had made the comparison, and was prepared to say that he had thereby acquired such a knowledge, and had become so familiar with the hand-writing that, without any immediate examination of them, he could say whether any other document was or was not in the hand-writing of the same person.

The admission of this witness, to make such proof, was opposed by the attorney-general and rejected.

This case seems an extreme one, but still, for two reasons, it may be doubted whether it ought to be treated as in decided conflict with the case commented on.

1. The decision is by a Committee of Parliament, and not by one of the regular tribunals of the realm; and, as it is doubted how far the proceedings in *Queen Caroline's case*, are binding on tribunals, the same doubt may extend to this case.   Best on Ev. 350.

2. The decision is itself much qualified, and rendered rather special by the language of Lord Chancellor Lyndhurst, who says, they ought not to allow a person to say, from the inspection of the signatures to two or three documents, that he could prove the hand-writing of a party.   A witness is properly allowed to speak to a person's hand-writing, who, from the inspection of various documents, has grown familiar with the hand-writing from frequent use of them.

In the case of *Doe, ex dem. Jenkins*, v. *Davis*, the parish clerk, of a parish in Bristol, produced the parish register for 1761, in which was contained an entry of a certain marriage exactly corresponding with a certificate produced, dated 1761, and purporting to be signed by the then curate.   This witness stated that he had then been clerk seven years, and, during this time, from inspecting various entries made by the curate in the register, he had acquired a knowledge of his hand-writing.   This witness had never seen the curate, who had died long before his time, and all his knowledge proceeded from his frequent inspections of those admitted entries.   This witness was allowed, by the presiding judge, to prove the hand-writing of the curate to the certificate, and his decision was affirmed by the whole court.

They contended, that admitting the plaintiff's location, there was a defect in his documentary title; that he had only shown an agreement for a sale, and had shown no deed of sale; that the court could not presume a deed of that part of the property which had been vacant, because no actual possession of it had been shown; that the court will only presume a deed in favor of rights, of which parties have long been in the peaceable and quiet possession. Cowp. 110.

Plaintiff's counsel contended, that by their documentary evidence, they had shown a unity of title as to the part actually possessed, and the vacant part, and therefore a deed ought to be presumed conformable to the agreement. 1 Caines, 84. That if the court will presume a deed only according to their actual possession, it would be a violent presumption, inasmuch as it would presuppose a departure from the agreement proved.

SPENCER, J. The plaintiff has here shown an entirety and unity of title, and actual possession of part, and no adverse possession of the residue until 1788. Under these circumstances, a deed conformable to the agreement must be presumed.(2)

Non-suit refused.

The defendant then rested his defence on a location of the Stoutenburgh patent, variant from that offered by the

(2) Kent, C. J., in delivering the opinion of the court at bar in this case, says, on this branch, "there was abundant reason for the jury to presume a conveyance from Stoutenburgh to Kip; on that point there can be no controversy." See *Schauber* v. *Jackson*, (2 Wend. 13,) where this subject is considered in the Court for the Correction of Errors, and many cases cited.

Jackson v. Murray.

plaintiff, and upon an adverse holding of the land in controversy of more than 20 years by those under whom he claimed. In showing the adverse possession, the counsel offered in evidence the confessions of a person deceased, who had occupied the land at a remote period.

This evidence was objected to by the plaintiff.

SPENCER, J. The confessions of a tenant in possession, as to his holding, have always been received in evidence.(3)

The jury ultimately found for the plaintiff.(4)

*Emmet, Hoffman,* and *Jones,* for plaintiff.

*Colden, Harrison,* and *Robinson,* for defendant.

3) The declarations of tenants are admissible evidence, after their death, to prove that a certain piece of land is parcel of the estate which they occupied. Runnington, 251. Buller, J., in the case of *Davis* v. *Pierce,* (2 T. R. 54,) says that this question was decided in *Halloway* v. *Rakes,* (B. R. M.; 12 Geo. 3.) and *Doe, ex dem. Foster,* v. *Williams,* (Cowper, 621.) In the former, the lessor claimed as devisee in remainder, under a will twenty-seven years ago, under which there was no possession, and, therefore, seizin in the devisor was necessary to be proved. For this purpose, a witness was called to speak to the declarations of the tenant in possession at that time, "that he held as tenant to the devisor." A new trial was moved for, on the ground of the inadmissibility of this evidence, and it was objected, that this was mere hearsay evidence, and that the party making the declaration was not upon oath; but the court held the evidence properly admitted. Vide *Pitts* v. *Wildsr,* 1 Comst. 525.

(4) A new trial was granted, in this cause, in November term, 1810, (7 Johns. 5,) on the location of the patent. It was thereupon ruled, by the court, that an old patent or grant, after the lapse of 160 years, would not be allowed to be located, or extended beyond the actual and notorious possession and location of the party, especially when there is the slightest evidence of adverse possession for above 20 years, and that, in all cases of uncertainty in the location of patents and deeds, the party is to be held to his actual location.